IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALBERTO ROBERTS and
TERRY WALKER

Plaintiffs,

    v.                                                            1:05-cv-1614-WSD

CITY OF HAPEVILLE, J.N.
STRUTKO, JASON DYER, and
JASON LONG, individually and in
their official capacities

                       Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants City of Hapeville, Officers

John Strutko, Jason Dyer, and Jason Long's ("Defendants") Motion for Summary

Judgment.  (Def. MSJ [32].)[1]

I.      BACKGROUND

---

    [1] Plaintiffs also filed an "Objection to Defendants' Allegation that Plaintiffs
and their Counsel engaged in Misconduct." [50].  Similar to a sur-reply, the
substance of this objection serves largely to rebut particular facts asserted by
Defendants in their Reply brief.  No party to this action has made any official
accusation of misconduct, and no further action by the Court is required.

This case arises from the arrest of Plaintiffs Alberto Roberts and Terry Walker ("Plaintiffs") for obstruction of justice and disorderly conduct.  In the early morning hours of February 27, 2005, Plaintiffs and their companions James Roberts and Tommy Roberts ("the companions"), after some early morning billiards, went to eat at the International House of Pancakes ("IHOP") in Hapeville, Georgia.  Plaintiffs' group was seated near Defendant City of Hapeville police officers Strutko, Dyer and Long, and a fourth unidentified officer.  Officer Strutko was working off-duty security for IHOP.

Plaintiffs' group allegedly became loud, used profane language and made rude comments to female patrons and employees.[2]  Officer Strutko approached the group and told them to quiet down.  Plaintiff Roberts apologized and told Strutko they would be more quiet.  Less than 10 minutes later, Officer Strutko again

---

[2] Plaintiffs and Defendants each present very different versions of the facts in this case.  Plaintiffs deny using profane language or making rude comments to other patrons or employees in the restaurant.  The Court discusses the allegations in order to provide background to the events leading to Plaintiffs' arrest.  To support Plaintiffs' account of events in the restaurant during the time in question, Plaintiffs cite liberally to the IHOP security footage.  While the footage does not contain any sound and presents only a time-lapse video of the events in the restaurant, even with this video record the Court notes that Plaintiffs' account of the events is significantly divergent from what the Court observed of the security footage.

approached Plaintiffs' table and told them to quiet down.  Plaintiff Roberts became

uncooperative, argumentative and attempted to involve other patrons in the

argument.  Roberts argued that his group was not being loud and stated he would

not be quiet unless told to do so by a manager.  Officer Strutko then instructed

Roberts to accompany him outside the restaurant.[3]

Officer Strutko exited the restaurant with Roberts.  Officers Dyer and Long

followed Strutko and Roberts from the dining area and outside the IHOP.  Plaintiff

Walker, along with his two companions, also followed Roberts and the officers

outside.

Upon exiting the restaurant, Roberts made a quick right turn with his hands

behind his back.  Officer Strutko perceived Roberts' action as aggressive and

---

[3]  The parties disagree regarding the method in which Plaintiff was escorted
outside the restaurant.  Roberts claims he was pushed and shoved through the
dining area.  Plaintiff Walker claims Officer Strutko grabbed Roberts by the shirt
collar and belt of his pants, pulling him from the dining area.  Plaintiffs' companion
Tommy Roberts claims Strutko twisted Roberts's arm behind his back and
escorted him from the dining area.  All of these accounts are wholly inconsistent
with what was captured on the security camera, and the footage shows no such
abuse of Roberts by Strutko.  Defendants deny that Strutko had any physical
contact with Roberts while escorting him outside the restaurant.  Regardless, the
Court finds that any minimal physical contact between Strutko and Roberts at that
point is insignificant to Plaintiff Roberts' claims.

attempted to take him into custody.  Although events surrounding Roberts' arrest

largely are disputed, it is undisputed that while Strutko attempted to handcuff

Roberts, Roberts twisted and turned, which Roberts explains occurred because he

wanted to see was happening with his companions.[4]

Plaintiff Walker and the companions immediately exited the restaurant after

Roberts was escorted out.  An altercation took place between Plaintiff Walker and

Officers Dyer and Long, but Plaintiffs and Defendants' versions of what occurred

are very different.[5]  EMS personnel were called and treated Plaintiff Walker, after

---

[4] According to Officer Strutko, he handcuffed Roberts, but Roberts
continued to try to pull away and turn around.  Strutko testified that he then
withdrew his pepper spray and threatened to use it on Roberts if he did not cease
resisting.  Roberts subsequently complied.  Roberts claims, on the other hand, that
he was not resisting arrest, but Officer Strutko withdrew his gun and held it to his
neck, stating "Oh, you want to resist; you want to resist?"  The Court notes that
Plaintiffs' companion, Tommy Roberts, contradicted Roberts' claim, testifying that
he never saw an officer draw his weapon during the encounter.  (T. Roberts Dep.,
at 50.)

[5] According to Officers Dyer and Long, Walker was immediately told to get
back when he exited the restaurant and began approaching Strutko and Roberts.
Perceiving a possible threat, Dyer tried to prevent Walker from approaching
Plaintiff Roberts and Officer Strutko, but Walker became physically combative,
and Dyer and Long took Walker into custody.  The officers instructed Walker to
get on his knees, but Walker refused.  Dyer then withdrew his pepper spray and
told Walker he would use it if Walker did not comply.  Because Walker was
combative, Dyer discharged a burst of pepper spray to Walker's face.  Walker
continued to resist, and Dyer discharged a second burst of pepper spray towards

which Officer Strutko took Plaintiffs Roberts and Walker to the City of Hapeville Police Department.

Plaintiff Roberts was arrested and charged with disorderly conduct under O.C.G.A. § 16-11-39 and obstruction under O.C.G.A. § 16-10-24.  Plaintiff Walker was arrested and charged with obstruction.  Walker and Roberts entered "no contest" pleas to the charges and were sentenced to 30 hours of community service.

On March 3, 2005, Plaintiff Roberts filed a complaint against Strutko with the police department.  As a result of the complaint, Officer Strutko was ordered to attend further training.

On June 20, 2005, Plaintiffs filed this Complaint against the City of Hapeville and Officers Strutko, Dyer and Long in their individual and official capacities.[6]

––––––––––––––––––––––

Walker.  At this point, Walker became compliant, and he was handcuffed.  Plaintiff Walker, on the other hand, claims that he was attacked by Officers Long and Dyer for no reason when he exited the restaurant.  Walker claims he took no aggressive action towards Defendants and did not resist being handcuffed, but he was thrown around, handcuffed, and sprayed with pepper spray while in handcuffs and lying on the ground.

[6]  Plaintiffs have stated that they are no longer pursuing their official capacity claims against Defendants.  (Obj. to Def. Allegation that Plaintiffs and Counsel Engaged in Misconduct [50], at 1 n.1.)

(Compl. [1].)  Plaintiffs asserted federal claims for illegal seizure/excessive force, false imprisonment, and false arrest.  (Compl., at ¶¶ 16-34.)  Plaintiffs alleged that their Fourth Amendment and due process rights were violated because the officers used excessive force and arrested Plaintiffs without a warrant or probable cause.  Plaintiffs also asserted state law claims for aggravated battery, assault and battery, and intentional infliction of emotional distress.  (Compl., at ¶¶ 37-49.)  Defendants move for Motion for Summary Judgment on all of Plaintiffs' claims.

**II.   DISCUSSION**

A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins.</u>

Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Liability of Defendant City of Hapeville

Defendant City of Hapeville ("the City") argues that Plaintiffs cannot establish liability on behalf of the City.  (Def. MSJ, at 22.)  Specifically, the City argues that Plaintiffs have not shown that the City had a policy or custom that caused the harm Plaintiffs allege.  Plaintiffs did not respond to this argument.

-7-

Failure to respond to an opposing party's arguments regarding a claim constitutes an abandonment of that claim and warrants the dismissal of the claims of the opposing party. <u>Bute v. Schuller Int'l, Inc.</u>, 998 F. Supp. 1473, 1477 (N.D.Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); <u>Welch v. Delta Air Lines, Inc.</u>, 978 F. Supp. 1133, 1137 (N.D.Ga. 1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims."). Plaintiffs having abandoned their claims against the Defendant City of Hapeville, summary judgment on these claims is appropriate.

  C. <u>Qualified Immunity for Defendant Officers Strutko, Dyer and Long</u>

  Defendant Officers Strutko, Dyer and Long argue they are entitled to summary judgment on all Plaintiffs' federal claims against them because they are entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[7] <u>Wood v. Kesler</u>, 323 F.3d 872, 877 (11th Cir. 2003)

---

  [7] Plaintiffs do not question whether Officer Strutko, while off-duty, was acting within his discretionary authority as an officer of the City of Hapeville Police

(citations and quotations omitted).  The process for analyzing a defense of qualified

immunity is well established:

> To be eligible for qualified immunity, the official must first establish
> that he was performing a "discretionary function" at the time the
> alleged violation of federal law occurred.  Once the official has
> established that he was engaged in a discretionary function, the
> plaintiff bears the burden of demonstrating that the official is not
> entitled to qualified immunity.  In order to demonstrate that the official
> is not entitled to qualified immunity, the plaintiff must show two things:
> (1) that the defendant has committed a constitutional violation and (2)
> that the constitutional right the defendant violated was "clearly
> established" at the time he did it.

Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004).

---

Department.  The Court finds that Officer Strutko was acting within his
discretionary authority granted under state law in arresting Plaintiffs.  See Bouye v.
Marshall, 102 F. Supp. 2d 1357, 1362 (N.D. Ga. 2000) (Thrash, J.) (holding that
off duty police officer employed as a security guard was entitled to qualified
immunity against plaintiff's § 1983 claim, in large part because he wore his uniform,
displayed his badge, was performing a police function in patrolling the apartment
complex and investigating suspicious behavior, and used his authority as a police
officer to detain and search plaintiff).  Moreover, Georgia courts have found that
off-duty officers were executing their official duties when they took law
enforcement action after observing violations of the law.  See Carr v. State, 176 Ga.
App. 113, 115, 335 S.E.2d 622, 624 (1985) (officers moonlighting as security
guards at concert were executing official duties when they arrested fan for public
drunkenness); Duncan v. State, 163 Ga. App. 148, 148-149, 294 S.E.2d 365, 366
(1982) (uniformed officer moonlighting as motel bar bouncer was executing official
duties when he subdued patron who became unruly and threatened to breach the
peace).

"A right is clearly established if, in light of preexisting law, the unlawfulness of the official's conduct is apparent." Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005).  This standard does not require that the specific conduct in question was previously found to be unlawful; the state of the law need only give an official "fair warning" that his conduct is unlawful. Id. (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)).  Qualified immunity therefore "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." Id.  "[T]he relevant question on a motion for summary judgment based on a defense of qualified immunity is whether a reasonable official could have believed his or her actions were lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499, 1503 (11th Cir.1990).

It is undisputed that Defendants were performing discretionary functions in making the arrests complained of by Plaintiffs.[8]  The burden thus shifts to Plaintiffs

───────────────

[8]  An official performs a discretionary function when his acts "but for the alleged constitutional infirmity, would have fallen with his legitimate job description," and the acts were done "through means that were within his power to utilize." Holloman v. Harland, 370 F.3d 1252, 1266 (11th Cir. 2004).  Georgia courts routinely find that an officer's conduct in arresting a suspect is discretionary.  See City of Atlanta v. Heard, 555 S.E.2d 849, 853 (Ga. App. 2001)

to show Defendants are not entitled to qualified immunity.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted."  Hyath v. City of Decatur, 2006 U.S. Dist. LEXIS 21184, at * 49 (N.D. Ga. Mar. 28, 2006).  "[T]his question boils down to whether the state of the law, at the time of the incident, gave fair warning to the official that his conduct was unlawful."  Id. at * 49-50.  The Court addresses Plaintiffs' federal claims for unlawful arrest and excessive force separately.

### I.    Illegal Seizure/False Arrest

Plaintiffs assert their Fourth Amendment rights were violated because there was no probable cause for their arrest.  "The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause.  Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had

_____

("Regardless of whether the detectives' decisions to not scrutinize certain evidence and to arrest [plaintiff] were flawed, those decisions remain discretionary."); Woodward v. Gray, 527 S.E.2d 595, 600 (Ga. Ct. App. 2000) (holding defendant "has [official] immunity from suit for the discretionary act of arresting the plaintiff for disorderly conduct," even when "such conduct exceeded the lawful authority of the police").

committed or was committing an offense."  <u>Crosby</u>, 394 F.3d at 1332 (quotations

and citations omitted).  For purposes of qualified immunity, the issue is not whether

probable cause existed but whether there was arguable probable cause.  "Qualified

immunity applies when there was arguable probable cause for an arrest even if

actual probable cause did not exist.  Arguable probable cause exists if, under all of

the facts and circumstances, an officer reasonably could--not necessarily

would--have believed that probable cause was present"  <u>Id.</u> (quotations and

citations omitted).  "Whether a particular set of facts gives rise to probable cause

or arguable probable cause to justify an arrest for a particular crime depends, of

course, on the elements of the crime."  <u>Id.</u> at 1333.

Plaintiff Roberts was arrested for obstruction and disorderly conduct.

Plaintiff Walker was arrested for obstruction.  The Georgia statute defining

obstruction provides:

> a person who knowingly and willfully obstructs or
> hinders any law enforcement officer in the lawful
> discharge of his official duties is guilty of a misdemeanor.

O.C.G.A. § 16-10-24(a).  Disorderly conduct is defined as:

> A person commits the offense of disorderly conduct
> when [he]. . . (1) Acts in a violent or tumultuous manner
> toward another person whereby such person is placed in

> reasonable fear [for his] safety . . . (3) Without
> provocation, uses to . . . another person . .. opprobrious
> or abusive words which by their very utterance tend to
> incite an immediate breach of the peace . . . .

O.C.G.A. § 16-11-39(a).

In the events leading up to the arrest, Officer Strutko approached Plaintiffs'
table two times to ask them to be quiet.  Plaintiffs admit that they were talking and
laughing at the table.  (A. Roberts Dep., at 42-44; Walker Dep., at 22.)  Officer
Strutko, along with others present in the restaurant,[9] believed Plaintiffs and their
companions were being loud and verbally abusive to certain patrons and employees
in the restaurant.[10]  When Officer Strutko told Plaintiffs to quiet down a second
time, Plaintiff Roberts admits he began arguing with Strutko.  Roberts attempted to
involve other patrons in the discussion, argued that his group was not loud, and
generally was noncompliant with Officer Strutko's request.  Officer Strutko

---

[9]  Tina Tozzo, a waitress at the IHOP, testified that Plaintiffs' group was
"very loud" and was using profane language.  She testified that they were "loudly
and rudely speaking to women patrons and women staff members."  (Tozzo Aff.,
attached to Def. MSJ [32] as Ex. D, at ¶ 6; Strutko Aff., at §§ 6, 8.)

[10]  Plaintiffs deny that they used profane language or spoke rudely to other
customers.  Roberts, in his affidavit, denied using profanity.  (Roberts Aff.,
attached as Ex. E to Pl. Resp. to Def. MSJ [41], at ¶7.)  Plaintiffs' companion,
Tommy Roberts, testified that he "did not recall" the group using profanity.  (T.
Roberts Dep., at 70.)

testified that Roberts became verbally abusive and rude at this point.  Officer

Strutko told Roberts to accompany him outside to further discuss his behavior.  In

his complaint to the police department, Roberts admitted that when Strutko asked

him to step outside, Roberts refused to do so unless he was under arrest.

Roberts admits that after they exited the restaurant, he made a quick turn to

his right.  (A. Roberts Dep., at 54.)  Under these facts, which are uncontested by

Roberts, when Roberts moved toward him, Officer Strutko reasonably could

perceive Roberts's actions as aggressive.  Roberts admitted that while Officer

Strutko was arresting him and attempting to place him in handcuffs, Roberts

twisted and turned, trying to look at Plaintiff Walker and his companions.  (Roberts

Dep., at 91-92, Strutko Aff., at ¶¶ 17-19.)  Strutko reasonably could perceive

Roberts as continuing to try to pull away and turn around.

Plaintiff Walker and his two companions immediately followed the officers

and Roberts outside the restaurant.  Plaintiff Walker admits that when he exited the

restaurant, he was very close to the police officers.  (Walker Dep., at 43.)  Officers

Long and Dyer reasonably could perceive as threatening Walker and his

companions' immediate decision to closely follow them outside of the restaurant.

Perceiving Walker as approaching Strutko and Roberts and presenting a risk to

them, Officers Dyer and Long arrested Walker to prevent him from further obstructing the arrest or harming the officers.  (Id. at 44-50.)

Considering these facts, the officers could reasonably believe they had, and likely did have, probable cause to arrest Plaintiffs.  Officer Strutko reasonably believed that Roberts was obstructing or hindering him in the performance of his duties by making aggressive movements and, by twisting and turning, resisting his efforts to place him into custody.  Officer Strutko could also have reasonably believed he had probable cause to arrest Roberts for disorderly conduct when Roberts became argumentative, uncooperative and attempted to involve other patrons when he was asked to quiet down and when Roberts made aggressive movements towards him outside the restaurant.  Arguable probable cause existed even without Roberts' use of profane language towards Strutko, patrons and employees in the restaurant.

Officers Dyer and Long also reasonably could have believed they had probable cause to arrest Plaintiff Walker for obstruction.  They observed Walker, accompanied by two companions, approaching Officer Strutko and Roberts. Under these circumstances, they could reasonably have believed Walker was interfering with Strutko's efforts to arrest Roberts.  On the facts here, Defendants

-15-

had at least arguable, if not actual, probable cause to arrest Plaintiffs on the crimes

for which they were charged.  Defendants are entitled to qualified immunity on

Plaintiffs' false arrest claims.

     *ii.*    *Excessive Force*

     Plaintiffs also bring a claim of excessive force against Defendants.  "The

Fourth Amendment encompasses the right to be free from the use of excessive

force during an arrest."  <u>Crosby</u>, 394 F.3d at 1333.  "An officer will be entitled to

qualified immunity if his actions were objectively reasonable, that is if an objectively

reasonable officer in the same situation could have believed that the force used was

not excessive."  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002).  "[T]he

reasonableness inquiry in an excessive force case is an objective one: the question

is whether the officer's actions are objectively reasonable in light of the facts and

circumstances confronting him, without regard to his underlying intent or

motivation."  <u>Crosby</u>, 394 F.3d at 1333.  In making an excessive force inquiry, a

court "must see the situation through the eyes of the officer on the scene who is

hampered by incomplete information and forced to make a split-second decision

between action and inaction in circumstances where inaction could prove fatal."  <u>Id.</u>

at 1334.

"To balance the necessity of the use of force used against the arrestee's constitutional rights, a court must evaluate several factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . . the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight."  <u>Vinyard,</u>

311 F.3d at 1347.[11]   The Court addresses the use of force on Plaintiffs Roberts and

Walker separately.

        a.     *Plaintiff Roberts*

      Plaintiff Roberts' evidence does not support a claim for excessive force

against Strutko.  Under the Fourth Amendment test, Officer Strutko's actions were

objectively reasonable in light of the facts and circumstances confronting him.

---

    [11]   Plaintiffs assert their excessive force claim is also governed by the Fourteenth Amendment's Due Process Clause.  This is only partially correct.  The Fourteenth Amendment governs excessive force of pretrial detainees, but the Fourth Amendment governs excessive force effected during an arrest.  Garrett v. Athens-Clarke County, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) ("All claims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its reasonableness standard" and "[a]lthough the line is not always clear as to when an arrest ends and pretrial detainment begins, the facts here fall on the arrest end.").  Plaintiffs' allegations involve events which occurred almost entirely during their arrest.  In any event, the Court finds that Plaintiffs' allegations do not set forth a claim for excessive force under the Fourteenth Amendment.  Under the Fourteenth Amendment, "[t]o prevail on a substantive due process excessive force claim by a pretrial detainee, the plaintiff must prove that defendants' actions 'shock the conscience' and mere negligence is not enough.  The factors to be considered in assessing such a claim include: (1) the need for force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury inflicted; and (4) whether force was applied by the defendant in a good faith effort to restore or maintain discipline or rather maliciously and sadistically with the very purpose of causing harm."  Redd v. Conway, 160 Fed. Appx. 858, 860 (11th  Cir. 2005).

Although Roberts' crimes were relatively minor, Officer Strutko's actions were proportionate in response.  Roberts made a quick turn to his right when exiting the restaurant, and Strutko arrested him, in part to prevent him from further resisting or becoming violent.  Roberts then twisted and turned while being handcuffed.  According to Roberts, Strutko also pointed his weapon at Roberts and warned him not to resist.[12]  Roberts was subsequently taken to jail.  Strutko reasonably could

---

[12]  Roberts heavily relies on his allegation that Strutko pointed his weapon to Roberts' neck as the basis of his excessive force claim.  Plaintiffs cite no authority for the proposition that briefly aiming a weapon at a suspect while effecting an arrest constitutes excessive force.  In fact, the authority found by the Court holds to the contrary.  See Courson v. McMillian, 939 F.2d 1479, 1495 n.26 (11th Cir. 1991) (holding that an officer's pointing a weapon and ordering a person that has been stopped to lie on the ground while others are arrested is not excessive force and noting with approval the Fifth Circuit's distinction between an officer's use or attempted use of a weapon and mere display of a weapon in the line of duty "that only conditionally threatens actual force"); Gonzalez v. Doe, 2004 U.S. Dist. LEXIS 17033, at * 17 (S.D. Fla. Aug. 23, 2004) ("The pointing of weapons at Plaintiffs in order to execute the arrest and search warrants did not violate Plaintiffs Fourth Amendment rights."); Raby v. Baptist Med. Ctr., 21 F. Supp. 2d 1344, 1350 (M.D. Ala. 1998) (holding defendant police officer's actions in sticking his pistol through the window of plaintiff's car and pointing it at his head was not excessive force and stating that "where the officer merely points a gun at a suspect in the course of arresting him, the suspect would have no basis for claiming . . . excessive force").  Moreover, the Court finds that the record taken as a whole here could not lead a rational trier of fact to find for Roberts on his excessive force claim.  See Matsushita, 475 U.S. at 587.  In reaching this decision, the Court has assumed a gun was pointed at Roberts.  The evidence that this  happened is, however, doubtful, including because Robert's friend testified he never saw a gun

have perceived Roberts' actions as threatening, and his response of threatening

Roberts not to further resist was appropriate.  Other than the force required to take

Roberts into custody and finally place him in handcuffs, Strutko used no other

force.  There is no evidence Roberts suffered any ascertainable injury during the

arrest.  See Raby, 21 F. Supp.2d at 1351 ("[I]n determining whether the use of

force was reasonable, the presence of some physical injury is relevant to the

determination.").

        The right to make an arrest carries with it the right to use some degree of

physical force or threat to affect the arrest.  Crosby, 394 F.3d at 1334.

"Furthermore, the purpose of the qualified immunity doctrine is to give meaning to

the proposition that government officials are not required to err on the side of

caution when it comes to avoiding constitutional violations."  Id.  The amount of

force Officer Strutko used was appropriate in the situation, and he is therefore

entitled to qualified immunity on Roberts' claim for excessive force.

        b.      *Plaintiff Walker*

_____

drawn.

Taking the facts in the light most favorable to Plaintiff Walker, the Court finds that Walker's testimony, if true, establishes that the use of pepper spray during his arrest could have constituted excessive force.  Walker's version of events directly conflicts with Officers Dyer and Long's–he testifies he was immediately tackled after exiting the parking lot, handcuffed, and pepper sprayed.[13] Officers Dyer and Long testified that Walker was uncooperative and continued to attempt to reach Officer Strutko and Plaintiff Roberts.  They stated that Walker was arrested to prevent him from further obstructing the arrest, and that he was pepper sprayed only after he was warned, refused to stop resisting and did not calm down.  The Court's task here is to decide whether, under Walker's version of the events, Defendants Dyer and Long can assert qualified immunity.

The Eleventh Circuit in <u>Vinyard</u> addressed the precise issue before the Court.  In <u>Vinyard</u>, the defendant officer arrested the plaintiff for disorderly conduct and obstruction and placed her in his police car to take her to jail.  On the

---

[13] The Court views Walker's account of this specific incident in the context of his entire testimony and the Court's review of the security camera footage.  Considered as a whole, Walker's testimony is suspect at best.  At this stage, however, the Court may not make credibility determinations–that task is reserved for the factfinder at trial.

way to the jail, the plaintiff screamed and yelled at the officer, partly in response to

the officer's verbal abuse.  The plaintiff testified that the police officer pulled the

car to the side of the road, opened the door to the backseat where plaintiff was

seated, and sprayed the plaintiff with pepper spray.  The officer then resumed

driving to the jail, where the plaintiff was booked.  The Eleventh Circuit considered

whether the officer could assert qualified immunity to plaintiff's claim of excessive

force in discharging the pepper spray.

> The Eleventh Circuit held that the balancing test for excessive force weighed

heavily in favor of the plaintiff.  The court noted that under the defendant officer's

version of the facts, his actions were not excessive force because he testified the

plaintiff was being physically aggressive and was a danger to her own safety.  The

court acknowledged, however, that it was required to accept the plaintiff's version

of the facts in evaluating a motion for summary judgment.  First, it noted that

plaintiff's crimes, disorderly conduct and obstruction, were of minor severity.

Vinyard, 311 F.3d at 1347.  Second, although the plaintiff was screaming and using

foul language in the patrol car, plaintiff alleged that the officer also was verbally

insulting her.  Thus, the court reasoned that the plaintiff's conduct was a "nuisance

but not a threat to [the officer], herself or others."  Id.  at 1348.  Third, the court

noted there was "no indication that [the plaintiff] actively resisted the initial arrest or attempted to flee at any time" and "at the time of the force . . .[the plaintiff] was under arrest and secured with handcuffs and in the back seat of the patrol car."  Id.

The Vinyard court stated that "[c]ourts have consistently concluded that using pepper spray is reasonable . . . where the plaintiff was either resisting arrest or refusing police requests," and "pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee."  Id.  The court stated, however, that "[c]ourts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."  Id.

While Officers Dyer and Long's version of events supports the conclusion that the use of pepper spray was appropriate, the Court at the summary judgment stage must accept Walker's version of the facts.  Because Walker's account of the facts indicates that Officer Dyer's use of force was excessive, the Court necessarily concludes, at this stage of the litigation, that this claim must be allowed to proceed to trial, as weak as this claim may be.  According to Walker, he was tackled by Officers Dyer and Long and handcuffed almost as soon as he walked out of the restaurant.  Walker was handcuffed lying on the ground face down.

-23-

Walker claims he did not attempt to resist arrest, nor was he physically aggressive. Walker claims he posed no threat to the officers, himself or the public.  Vinyard compels the conclusion that using pepper spray on a handcuffed and nonresistant suspect is a violation of the right to be free from excessive force.  This right, therefore, was clearly established at the time, and Officer Dyer had fair warning that such force violated Walker's rights.  See Hyath, 2006 U.S. Dist. LEXIS 21184, at * 49 (noting that the Eleventh Circuit identified three ways to show fair warning: 1) a federal statute that is so specific as to clearly prohibit the conduct, 2) case law categorically prohibiting the conduct, and 3) a case prohibiting the described conduct, involving facts that are not fairly distinguishable from the facts in plaintiff's case).  Defendant Dyer is not entitled to assert qualified immunity as to Plaintiff Walker's excessive force claim.  As discussed above, Officers Strutko and Long are entitled to assert qualified immunity for their actions, and Officer Dyer is entitled to qualified immunity on the false arrest claims.

> D.    Official Immunity for Plaintiffs' Remaining State Law Claims

Defendants argue that they are entitled to official immunity on Plaintiffs' state law claims.  (Def. MSJ, at 18.)  It is "well established that where an officer is invested with discretion and is empowered to exercise his judgment in matters

brought before him . . . he is usually given immunity from liability to persons who may be injured as a result of an erroneous decision; provided the acts complained of are done within the scope of the officer's authority, and without *wilfulness, malice, or corruption.* City of Atlanta v. Heard, 555 S.E.2d 849, 852 (Ga. Ct. App. 2001) (quoting Hennessy v. Webb, 264 S.E.2d 878 (Ga. 1980)) (emphasis original). "The Georgia Constitution provides that state officers and employees 'may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.'" Bashir v. Rockdale County, 445 F.3d 1323, 1333 (11th Cir. 2006) (citing Ga. Const., art. I, § 2). Discretionary acts are those acts which call "for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Heard, 555 S.E.2d at 852 (citation omitted). So long as Defendants were acting in a discretionary manner within the scope of their authority, and without wilfulness, malice or corruption, they have discretionary immunity from suit. The plaintiff has the burden to demonstrate that a defendant official acted with actual malice. See Bashir, 445 F.3d at 1333.

-25-

The parties do not dispute that Defendants were performing discretionary functions in arresting Plaintiffs.  Plaintiffs, however, argue Defendants are not entitled to official immunity because Defendants acted with malice.  (Pl. Resp. to Def. MSJ, at 20.)

Plaintiffs have not put forth any evidence of malice, bad faith, wilfulness or corruption on the part of Defendants.  "Actual malice toward plaintiff must be shown, not mere anger, frustration, or irritation, to constitute an exception to official immunity."  Woodward, 527 S.E.2d at 600.  The Georgia Supreme Court has found "the term 'actual malice,' as set forth in the 1991 amendment [to the Georgia Constitution], to denote 'express malice or malice in fact.'  Express or actual malice, although not a term typically used in the context of civil litigation, is found in criminal law and has long been distinguished from 'implied malice,' a term which has been defined to mean conduct exhibiting a 'reckless disregard for human life.'"  Merrow v. Hawkins, 266 Ga. 390, 392 (1996) (quotations and citations omitted).  Officials are not liable for acts taken "with implied malice in the performance of their official functions."  Id.  In the absence of any evidence of malice, summary judgment for Defendants on Plaintiff's state law claims is required.

In Phillips v. Hanse, 281 Ga. 133 (2006), the Georgia Supreme Court elaborated on the meaning of "actual malice" in an official immunity context.  In Phillips, the defendant officer engaged in a high-speed chase that ended when the suspect struck a car, killing the driver and injuring the three children who were passengers.  The defendant officer violated a county police manual by failing to come to a complete stop at stop signs and traffic lights and by bumping the fleeing vehicle.  The defendant police officer asserted official immunity under Georgia state law.  The Supreme Court held that bumping the fleeing suspect's car did not constitute a deliberate intention to do wrong so as to satisfy the actual malice requirement.  Phillips, 281 Ga. at 136.  The court reasoned that although the police officer's actions might be considered reckless, actual malice required more than

reckless conduct.[14]  It further noted there was no evidence that the officer intended to physically harm anyone by his actions.

The Court has already held that there was arguable probable cause for both Plaintiffs' arrests in this case.  Officer Strutko acted reasonably in his treatment of Roberts while placing him under arrest.  Defendants' arrest of Roberts and Walker and the application of force used to arrest Roberts clearly did not involve malice.

---

[14]  The Phillips court discussed past cases where it found reckless conduct. It noted that in Merrow, it concluded that "actual malice" "requires a deliberate intention to do wrong."  281 Ga. at 135.  The court further noted that in Adams v. Hazelwood, 271 Ga. 414 (1999), a high school coach punished a student by requiring him to cut weeds under the school's stadium bleachers with a pair of scissors.  The student was injured as a result and sued the coach.  In determining whether the coach acted with actual malice, the student's argument that the coach's conduct constituted "actual malice" because the coach acted with ill will towards him was insufficient to overcome the defendant's official immunity.  The court concluded that "actual malice means a deliberate intention to do a wrongful act, and that such act may be accomplished with or without ill will and whether or not injury was intended."  Id. at 136.  The Adams court concluded that there was no evidence the coach acted with a deliberate intent to commit a wrongful act, and that he was entitled to summary judgment.  In concluding that the Phillips defendant was entitled to official immunity, the court also relied on its decision in Cameron v. Lang, 274 Ga. 122 (2001), where it concluded that an officer who violated state law by engaging in a high-speed chase and running a stop sign without activating his siren and blue lights did not act with actual malice.  The court found that the violation of the state law in Cameron did not constitute a "deliberate intention to do wrong" so as to constitute actual malice.

-28-

Even though Defendant Dyer acted unreasonably if he discharged pepper spray in Walker's face after Walker was handcuffed on the ground, Plaintiffs have the burden to show that Defendant Dyer acted with actual–not implied–malice in discharging the pepper spray.  Plaintiffs do not offer any evidence of malice.  They simply make the conclusory statement that there is no explanation for Dyer's actions "except that they were intentional, with malice, or if they did not intend the consequences of their actions, then it was negligent performance."  (Resp. to Def. MSJ, at 21.)  In the absence of any evidence of malice, Defendant Dyer is entitled to official immunity.  The Court therefore concludes that Defendants Strutko, Dyer and Long are entitled to official immunity on Plaintiffs' state law claims.

## III.    CONCLUSION

Accordingly,

Defendants Motion for Summary Judgment [32] on Plaintiffs' federal claims is **GRANTED** in part and **DENIED** in part in accordance with the terms of this Order.  Defendants Motion for Summary Judgment is granted on all Plaintiffs' claims except Plaintiff Walker's federal claim of excessive force against Officer Dyer in his individual capacity.

**SO ORDERED** this 15th day of February, 2007.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE